## Case No. 2,763.

### The CITY OF NORWICH et al.

[8 Ben. 206.][1]

District Court, E. D. New York.    July, 1875.

COLLISION IN EAST RIVER — STEAMBOAT AND TUG —CROSSING COURSES.

1. The brig T. Z., while being towed down the East river by the tug F. W., at the end of a hawser, came in collision with the steamboat C., and her owner filed a libel against the C. and the F. W. to recover the damages. The case was heard on a single deposition, that of the captain of the T. Z., examined as a witness in behalf of the libellants. The tide was ebb and the day·was fair, and the vessels came in sight of each other at a good distance apart, the C. having come round the Battery from the North river into the East river. The C. claimed that it was the duty of the F. W., because she had the C. on her starboard hand, to keep out of her way, and that instead of doing so she sheered in towards the New York shore across the bows of the C., and thus brought the brig in collision with her. The F. W. claimed that the C. was on her port hand as she came down the river, and instead of keeping on the port hand starboarded her helm and ran across the hawser, and thus came in collision with the brig. Held, that the claim made by the C. was not taken in the libel, nor was it sustained by the witness, his evidence showing that the C., in coming round from the North river, had reached to the middle of the East river, on the port hand of the tug and tow, and after that had so neared the New York shore as to be within 400 feet of the piers when she struck the hawser.

2. No reason being shown for her changing her course so as to approach the New York side of the river, she must be held to have caused the collision by such movement, and to be solely in fault.

In admiralty.

Goodrich & Wheeler, for libellant.

J. W. C. Leveridge and W. R. Beebe, for the City of Norwich.

R. D. Benedict and Andrew Stewart, for the Woodruff.

BENEDICT, District Judge. This action is brought by Henry Thackray, the owner of the brig Torrid Zone, to recover of the Sound steamer City of Norwich, and the steamtug

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

F. Woodruff, for damages arising from a collision which occurred in the East river, on the 18th day of June, 1874.

While the pleadings interposed by the respective vessels are at issue upon most, if not all, material points, the case has been submitted to me for determination upon the deposition of a single witness, the master of the brig, produced by the libellants. The right of parties to ask a decision of the court upon the written deposition of a single witness from one of the colliding vessels, out of many at hand, cannot be denied; and still I must say that I dislike to be compelled to determine the rights of parties in this way, when those rights are made to depend in great measure upon the construction to be put upon the expressions of the witness. From this deposition and the admission of the pleadings, it appears that the brig Torrid Zone was being towed down the East·river upon a hawser by the tug Franklin Woodruff. The City of Norwich was bound up the East river, having come around the Battery and into the East river upon a starboard helm. The weather was fair, the tide ebb, and all vessels could be easily seen. When in the East river the City of Norwich ran across the hawser by which the brig was being towed by the Woodruff, and so came in contact with the brig, causing the damage sued for. It appears that the vessels saw each other as they approached, and that the collision arose from the attempt of both the steamer and the tug to take the New York side in passing.

On the part of· the City of Norwich, it is contended that the tug, having the City of Norwich on her starboard hand as she approached, ported, and ran across the steamer's bow, thus causing the collision.

But this position is not taken by the libellant upon the argument, does not appear in the libel, and is not supported by the witness. On the contrary, the deposition shows that the course of the tow was down the New York side of the river, bearing towards the New York side, while that of the City of Norwich was outside of the course of the tow, and bearing towards the middle of the river until she reached the middle of the river, and that afterwards she neared the New York side, so that when she struck the hawser of the tow she was only about 400 feet from the New York side. The channel of the East river curves sharply between the points at which these vessels sighted each other and the point of collision; and the course pursued by the City of Norwich, as described by the only witness called, was a course which crossed the course of the tug from the middle towards the New York side of the channel. No cause is shown for taking this course. For all that appears, she might have kept in the middle of the river, which the witness swears she had once reached. Had she done this no collision would have occurred.

Upon this evidence, therefore, I cannot do otherwise than hold the City of Norwich in

fault for thus crossing towards the New York side before a tow, seen by her to be intending to pass down on that side.

Let a decree be entered condemning the City of Norwich to pay the damages, and dismissing the libel against the Woodruff.